UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO MAYEN, individually on his own behalf and on behalf of all others similarly situated,<br><br>**Plaintiff**<br><br>v.<br><br>CAL CENTRAL HARVESTING, INC., and DOES 1-100 inclusive,<br><br>**Defendants** | CASE NO. 1:21-CV-0145 AWI JLT<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 34) |

This is a putative class action brought by Plaintiff Julio Mayen ("Mayen") against his former employer Cal Central Harvesting, Inc. ("CCH"). Following an order on a Rule 12(c) motion by CCH, the operative complaint is the First Amended Complaint ("FAC"). Mayen alleges seven violations of the California Labor Code, violation of Cal. Bus. & Prof. Code § 17200 for unfair competition ("the UCL"), and violation of 29 U.S.C. § 1801 et. seq. the Agricultural Worker Protection Act ("AWPA"). Currently before the Court is Defendant's Rule 12(b)(6) motion to dismiss. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

### **RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Benavidez v. County of

San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Benavidez, 993 F.3d at 1145.  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility."  Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**FACTUAL BACKGROUND**

Mayen is an individual who resides in Kern County, California and is a seasonal agricultural worker within the meaning of the AWPA.  Mayen was employed by CCH, who is a farm labor contractor who provides agricultural employees to various agricultural businesses and farms throughout Kern County.  Mayen and the Class enter into working arrangements with CCH each agricultural season.  The working arrangements include the understanding that CCH would pay Mayen and the Class either an hourly rate or a piece rate, depending on the work being performed.  The arrangements required CCH to pay Mayen and the Class their agreed upon wages

for all hours worked or pieces performed, for required rest periods, to abide by applicate California Industrial Welfare Commission Wage Orders ("Wage Order"), and to provide itemized wage statements. However, Mayen and the Class routinely worked seven days a week and more than ten hours in a workday, but were not compensated for any hours worked in excess of ten hours or paid premium wages for the sixth and seventh workdays. Mayen and the Class routinely worked more than ten hours in a workday. Mayen and the Class would average 55 hours worked per week, depending on the week, and when paid by the hour, pay rate would be $11 per hour (when paid on a piece rate, the amount would vary). CCH's practice and policy was to not compensate Mayen and the Class for hours worked in excess of ten in a workday. On an average 55 hour work week, Mayen and the Class were entitled to be paid $247.50 in overtime. CCH also did not permit the Class to take full 10 minute rest periods or full 30 minute meal periods, but instead required the Class to remain at the workplace and to take as short a break as possible. Further, when paid by a piece rate, CCH did not compensate Mayen and the Class or account for rest periods. CCH also required that Mayen and the Class purchase their own tools which were indispensable for performing the work, yet CCH never issued reimbursements for the tools. CCH also required Mayen and the Class to travel between fields in their own vehicles, sometimes as often as three times per day, with a 10 to 15 minute travel time. However, CCH did not record or pay for travel time between fields or reimburse Mayen and the Class for using their own vehicles. Finally, when either the harvest season ended or an employee quit or was discharged before the season ended, CCH did not timely pay all wages owed.

From the above allegations, Mayen on behalf of himself and the putative Class alleges the following causes of action: (1) failure to pay overtime (hours worked in excess of 10 per day, and days worked on the sixth and seventh workdays) in violation 8 Cal. Code Regs. § 11140(3)(A) and Labor Code § 1194; (2) failure to pay minimum wages in violation of Labor Code § 1197 and Wage Order 14; (3) failure to provide an itemized wage statement in violation of Labor Code § 226(a); (4) failure to timely pay wages upon termination or resignation in violation of Labor Code §§ 201(a) and 202(a); (5) failure to provide rest breaks in violation of Labor Code § 226.7; (6) failure to pay for unprovided meal breaks in violation of Labor Code § 512; (7) failure to

3

1  reimburse for expenses reasonably incurred in violation of Labor Code § 2802 and 29 U.S.C. §
2  1832(c); (8) violating the AWPA by failing to pay wages due, post a notice setting for rights and
3  protections, and violating the terms of working arrangements; and (9) unfair competition under the
4  UCL.

## **DEFENDANT'S MOTION**

*Defendant's Argument*

CCH argues that the first, fourth, fifth, sixth, seventh, eighth, and ninth causes of action should be dismissed.

As to the first cause of action, CCH argues that the FAC continues to include vague and conclusory allegations and that the new factual allegations do not support a plausible claim. There is no information about shifts (including duration) or specific policies regarding overtime. Mayen alleges that he is owed an average of $247.50 in overtime per week based on an average work week of 55 hours. With a base hourly rate of $11, and an overtime rate of $16.50, Mayen is claiming that he and the Class are entitled to 15 hours of overtime. However, an employee could work as many as 60 hours over a six day period without triggering any overtime obligations under Wage Order 14. The only fact that would constitute a violation of Wage Order 14 is the allegation that Mayen worked more than 10 hours per day, but the Court has already held that this allegation is too conclusory. Moreover, this allegation appears inconsistent with the language that Mayen averaged 55 hours per week over a six day period. Further, the FAC continues to misstate Wage Order 14 in that the FAC alleges violations of overtime pay for a sixth day worked, when in fact Wage Order 14 requires overtime wages for working a seventh day. Finally, Mayen fails to identify a specific workweek in which he was not paid overtime.

As to the fourth cause of action for waiting time penalties due to failing to pay wages upon termination or resignation, the claim is too conclusory. The FAC alleges that CCH failed to pay Mayen and class the wages due upon resignation, more than 30 days elapsed form the time that Mayen or the class left CCH's employ, and that each employee is owed at least $2,640 in waiting time penalties. The FAC fails to allege if Mayen or any class member was discharged or quit,

4

does not allege when any relevant separation occurred, does not identify what any class members monthly wages were, when the wages were owed (either immediately upon termination or with 72 hour upon resignation), and there is nothing that demonstrates willfulness.

As to the fifth cause of action for rest period violations, the FAC merely recites the relevant statutory language and that CCH would require Mayen and the class to take as short a break as possible, typically lasting only a few minutes to go to the bathroom or other brief activity. There are no allegations about workloads, shift schedules, company policies, possible discipline for taking longer breaks, or when any violations occurred, including whether Mayen had worked a shift entitling him to a break.  The breaks described could have been merely bathroom breaks that were granted but not legally required.

As to the sixth cause of action for failing to provide meal periods, the FAC merely recites the relevant statutory language and then alleges that CCH would require Mayen and the class to eat as quickly as possible, prohibited them from leaving the work area, and the period would last about 10 minutes.  The FAC fails to allege who prohibited employees from taking a longer meal period, how they were forced to stay in the work area, what policies existed on meal periods, where Mayen and the class were working during any meal period, what dates the meal period violations occurred, the hours worked when a meal period was allegedly cut short, and whether any class member was entitled to a meal period on a day when a shortened meal period was provided.

As to the seventh cause of action for failing to reimburse expenses reasonably incurred, the FAC merely recites the relevant statutory language and then alleges that Mayen and the class were required to provide their own protective equipment and hand tools, the cost of which varied and are subject to proof.  However, the FAC does not definitively allege that any Class member was required to purchase equipment or tools, no specific hand tools or protective equipment are identified, it is unknown when or how the equipment and tools were purchased or how much any Class member paid for the tools, and whether any Class member sought reimbursement.

As to the eighth cause of action for violations of AWPA, the Court previously dismissed claims based on AWPA's posting requirement (§ 1831(b)) because there was only a bare

5

allegation. The FAC added no new allegations and thus, continues to fail to state a plausible claim. Also, with respect § 1831(c), the allegations are vague and fail to identify who communicated to Mayen or the class that they would be provided with an itemized wage statement, when the communication occurred, or how any class member accepted that the itemized wage statement would become part of the working arrangement.

As to the ninth cause of action for violation of the UCL, as a derivative claim, any claim that is dismissed as inadequately pled cannot support a UCL claim. Further, waiting time penalties and penalties for alleged meal and rest period violations are not recoverable under the UCL because these penalties do not constitute restitution. Finally, as a former employee, Mayen has no standing to seek injunctive relief against CCH under the UCL.

Finally, CCH argues that because the Court already granted leave to amend a prior time, dismissal of the above claims should be without leave to amend.

*Plaintiff's Opposition*

Mayen argues that, with limited exception, the FAC alleges plausible claims.

As to the first cause of action, Mayen argues that that the FAC alleges that he worked more than 10 hours per day and regularly worked seven days a week, yet he received no overtime. The FAC also includes the rate of pay at $11 per hour, identifies that shifts were generally over 10 hours per day and over 55 hours per week, alleges that CCH has a policy of not paying overtime or compensating for off the clock work, and estimates that Mayen is owed $247.50 of unpaid overtime per week. This satisfies the pleading requirements of *Landers*. However, Mayen acknowledges that the FAC misstates Wage Order 14, contains incorrect information regarding a sixth workday, and does not correctly allege an overtime calculation based on a seven day workweek. Mayen requests leave to amend this claim to correct the erroneous allegations. Specifically, Mayen explains that an amended complaint would eliminate references to a sixth day, allege that he and the class worked 70 hours in a seven day work week, and would be entitled to $165 per week of unpaid overtime.

As to the fourth cause of action, Mayen argues that the FAC sufficiently alleges a plausible claim for wait time violations. The FAC alleges that CCH had a uniform policy of requiring the

6

class to perform off the clock work and failing to pay all wages due when paid by piece rate. CCH also did not reimburse the class for the class's necessary expenditures. The FAC alleges that the Class either quit or were discharged during or between various harvests, but CCH failed to timely pay all wages due at the time of separation and that each class member is owed at least $2,640 in waiting time penalties. These allegations support a plausible claim.

As to the fifth and sixth causes of action, the FAC alleges that CCH failed and refused to authorize or permit the class to take 10 minute rest periods for every four hours worked. Instead, CCH required the class to take as short a break as possible that usually lasted only a few minutes. The FAC alleges that CCH owes them $11 per violation of the rest break requirement. Similarly, CCH did not permit the Class to leave the rest area, and would typically only permit a 10 minute meal break. The FAC alleges that CCH owes the class $11 per violation of the meal break requirement. These allegations support plausible claims.

As to the seventh cause of action, the FAC alleges that the class was required to provide their own tools and protective gear that were necessary to the performance of the work required of them and to travel in their own vehicles between fields. However, CCH did not reimburse the class for any of these necessary and required work related expenses. These allegations support a plausible claim. These allegations support a plausible claim.

As to the eighth cause of action, Mayen acknowledges that he did not include additional factual allegations with respect to § 1831(b) and requests leave to amend. With respect to § 1831(c), Mayen alleges that the FAC adequately alleges the existence of "working arrangements." The working arrangement are created at or near the time of hire. As part of the working arrangements, it was understood through words, conduct, practice, custom, or usage that the class would be paid an hourly rate or a piece rate, that CCH would follow California's wage orders and laws, including providing an itemized wage statement. The FAC also alleges that these working arrangements are contracts under the AWPA. Therefore, a plausible claim under the AWPA for violating working arrangements is pled. These allegations support a plausible § 1832(c) claim.

Finally, as to the UCL, because the FAC properly alleges various causes of action, those causes of action form a basis for valid UCL claims.

*Discussion*

1. First Cause of Action – Failure to Pay Overtime

    a. Legal Standards

In California, "any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194(a); Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 169 n.5 (2000). Agricultural workers covered by IWC Wage Order No. 14 "shall not be employed more than ten (10) hours in any one workday or more than six (6) days in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over ten (10) hours in any workday and for the first eight (8) hours on the seventh (7th) day of work and double the employee's regular rate of pay for all hours worked over eight (8) on the seventh (7th) day of work in the workweek." 8 Cal. Code Regs. § 11140(3)(A)(1); Alcala v. Western Ag. Enterprises, 182 Cal.App.3d 546, 548 n.1 (1986).

To properly allege a Labor Code § 1194 failure to pay overtime claim, it is inappropriate to merely recite statutory language or rely on mere conclusory statements that are nothing more than labels or the statutorily required elements. See Landers v. Quality Communs., Inc., 771 F.3d 638, 644 (9th Cir. 2015); Ritenour v. Carrington Mortg. Servs. LLC, 228 F.Supp.3d 1025, 1033 (C.D. Cal. 2017). Rather, a plaintiff must include sufficient factual allegations that plausibly indicate that the plaintiff worked more than 10 hours a day or worked more than six days in a workweek, yet did not receive overtime pay. See Landers, 771 F.3d at 644-45;[1] Ritenour, 228 F.Supp.3d at 1033. For example, a plausible § 1194 claim can be alleged by estimating the average hours in a workday or workweek of the plaintiff during the applicable period, the average rate at which the plaintiff was paid, and the overtime wages that the plaintiff believes he is owed. See Landers, 771 F.3d at 645; Ritenour, 228 F.Supp.3d at 1033. However, plausibility is "context specific" and a

---

[1] The *Landers* pleading standard has been extended to cover claims under Labor Code § 227.6 for rest break violation and Labor Code § 512 for meal break violations. Perez v. DNC Parks & Resorts at Sequoia, 2020 U.S. Dist. LEXIS 134590, *19 (E.D. Cal. July 29, 2020); Shann v. Durham Sch. Servs., L.P., 182 F.Supp.3d 1044, 1048 (C.D. Cal. 2016).

8

variety of other factual allegations may permit a court to find that a plaintiff has plausibly alleged that he was not paid owed overtime due for workday(s) or workweek(s).  See Landers, 771 F.3d at 645; Hansber v. Ulta Beauty Cosmetics, LLC, 2021 U.S. Dist. LEXIS 192456, *19-*20 (E.D. Cal. Oct. 5, 2021).

### b. Resolution

There appears to be no dispute that the first cause of action is flawed.  The allegation that the class regularly worked 10 hours a day for six or seven days a week is inconsistent with the allegation that the class's average work week consisted of 55 hours worked.  Further, the allegation that the class is owed $247.50 per week in overtime means that the class is claiming 15 hours of overtime ($16.50 x 15 hours = $247.50), which means 40 hours of the 15 hour work week was for non-overtime hours.  Considering that overtime is owed when an employee either works more than 10 hours a day or works on a seventh workday, Mayen's calculation does not plausibly indicate the Class either 10 hours worked per day or worked on a seventh day.  Mayen himself acknowledges that the first cause of action is not consistent with Wage Order 14, which is an admission that no plausible claim for overtime wages is actually stated.  Hence, Mayen's request to amend the FAC to eliminate references to a sixth workday, change the hours worked per week to 70, and change the amount of overtime owed is appropriate.

Given Mayen's recognition that the FAC's first cause of action is infirm, and considering that Mayen is contending that he and the class at least regularly worked a seventh workday, the Court cannot say that amendment would be futile.  Therefore, the Court will dismiss the first cause of action with leave to amend.  However, in addition to the changes identified by Mayen, he should also include an allegation that actually identifies and describes a typical work week in which overtime was due but not paid.  While Mayen does not need to specifically identify a particular week (e.g. the March 17, 2017 through March 23, 2017), Mayen should include allegations that describe the days the workweek began and ended, the time each workday began, and the time that each workday ended.  See Barajas v. Blue Diamond Growers, Inc., 2022 U.S. Dist. LEXIS 68791, *39-*40.  These allegations, combined with the changes that Mayen himself requests leave to make, should result in a plausible claim.

9

### 2. Fourth Cause of Action – Labor Code §§ 201, 202 – Failure to Pay Wages upon Termination or Resignation

California law requires wages to be paid in a timely manner at an employee's separation. "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201(a); Bernstein v. Virgin Am., Inc., 3 F.4th 1127, 1143 (9th Cir. 2021). When an employee without a written contract for a definite period quits, "his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." Cal. Labor Code § 202(a); Bernstein, 3 F.4th at 1143. Where an employer willfully fails to comply with §§ 201 and 202 upon an employee's separation, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a); Bernstein, 3 F.4th at 1143.

Here, the Court finds that the FAC plausibly alleges a for claim for wait time penalties under Labor Code § 203. The FAC explains that Class members are seasonal agricultural workers. See FAC ¶¶ 3(b), 10, 37. Some of the Class members quit before a particular harvest season ends, and some are terminated before a harvest season ends. See id. at ¶ 37. However, as seasonal employees, by definition the Class would at a minimum be terminated at the end of a harvest season. Cf. id. Thus, the nature of the employment reasonably demonstrates that the Class either quit or was terminated at some point during their employment with CCH. Further, the Court previously found that Mayen had alleged plausible claims against CCH for failing to pay the Class for performing necessary off the clock tasks. If CCH was wrongfully failing to pay the Class for performing necessary tasks, then the amount the Class should have been paid for those tasks would not be included in any final paycheck. Additionally, the FAC alleges that more than 30 days have elapsed since the Class ended their employment with CCH, yet they have not been paid all wages due and are owed $2,640 in waiting time penalties. See id. at ¶ 62. Finally, the FAC alleges that Defendants' willfully failed to pay them their wages. See id. at ¶ 61. Willfulness can be alleged generally. See Fed. R. Civ. P. 9(b); Reinhardt v. Gemini Motor

Transp., 879 F.Supp.2d 1138, 1142 (E.D. Cal. 2012); cf. Fuentes v. Maxim Healthcare Servs., 2018 U.S. Dist. LEXIS 226977, *16-*17 (C.D. Cal. Aug. 9, 2018) (holding similar allegations of willfulness under § 203 were sufficient). These allegations are not unduly conclusory and they support a plausible claim for wait time penalties.[2] Therefore, dismissal of the fourth cause of action is inappropriate.

### 3.  Fifth Causes of Action – Rest Break Violations

California employers are mandated by law to afford non-exempt employees rest periods during the day. Brinker Rest. Corp. v. Superior Ct., 53 Cal.4th 1004, 1018 (2012); see Cal. Lab. Code § 226.7(b). Wage Order 14 requires that employers provide their agricultural employees who work more than 3.5 hours per day with 10 minutes net rest time per 4 hours or major fraction thereof. 8 C.C.C.R § 11140(12). A compliant rest period is one in which the employee is relieved of all work duties and freed from employer control over how they spend their time. Augustus v. ABM Security Servs., Inc., 2 Cal.5th 257, 270 (2016). If an employer forces an employee to miss a rest break or fails to provide a legally compliant rest period, the employee is entitled to one hour of regular pay for each missed or non-compliant rest period. See Cal. Lab. Code § 226.7(c); Murphy v. Kenneth Cole Prods., Inc., 40 Cal.4th 1094, 1108 (2007).

Here, the FAC alleges that CCH violated Wage Order 14 by failing and refusing to permit the class to take 10 minute rest periods every four hours or major fraction thereof. See FAC ¶ 67. Instead, CCH would require the class to take as short a break as possible, typically lasting only a few minutes, to go to the bathroom or other brief activity. See id.

The Court finds that the FAC adequately alleges a plausible claim. First, by expressly alleging that CCH violated Wage Order 14 regarding rest breaks, it is reasonably inferred that the class worked a sufficient number of hours so as to be entitled to at least one rest break. Second, the FAC expressly describes a typical rest break as lasting only a few minutes, which combined

---

[2] The Court notes that Mayen argues that CCH's failure to reimburse the Class for travel and equipment expenditures also supports the waiting time claim. However, Labor Code § 203 requires that an employer pay all "wages" that are owed either immediately upon termination or within 72 hours of a resignation. See Cal. Lab. Code § 203. Mayen cites no authority for the proposition that owed reimbursements constitute "wages" for purposes of § 201, § 202, and § 203. However, since no party has raised the issue, it is sufficient for purposes of this motion to hold that there is at least one plausible claim in the fourth cause of action, and that claim is based on CCH not paying for necessary and required work that was performed off the clock.

11

with conduct that violated Wage Order 14, reasonably means that rest periods were well under 10 minutes. Third, the allegation expressly avers that CCH refused to authorize and permit 10 minute rest periods. This can reasonably be read to allege a standing policy or practice against full 10 minute rest periods. That is, the allegation suggests that CCH had a policy or practice of never providing full 10 minute rest breaks.

It is true that Mayen could provide more detail with respect to this claim as suggested by CCH. However, the degree of detail urged by CCH is simply unnecessary and more akin to what is required by Rule 9(b), not Rule 8(a). Cf. Cabrera v. South Valley Almond Co., 2021 U.S. Dist. LEXIS 240875, *7 (E.D. Cal. Dec. 16, 2021) (noting that *Landers* should not be read as requiring a pleading standard that resembles Rule 9). Paragraph 67 of the FAC is sufficient for the Court to infer a standing policy against providing the Class with legally compliant rest periods because it only permitted short breaks that typically lasted just a few minutes to use the restroom or the like.[3] Cf. Hansber, 2021 U.S. Dist. LEXIS 192456 at *18-*19 (finding allegations that the employer's standing policies operated on employees in such a way as to prevent employees from have legally compliant rest and meal periods); Harper v. Charter Communs., LLC, 2020 U.S. Dist. LEXIS 33054, *5-*6 (E.D. Cal. Feb. 25, 2020) (finding plausibly pled meal and rest break claims based on allegations that employer did not provide breaks, implemented demanding schedules, had no policies that designated rest periods, and discouraged employees from taking rest periods). Therefore, dismissal of the fifth cause of action is inappropriate. See id.

    4.    Sixth Cause of Action – Meal Break Violations

California employers are mandated by law to afford non-exempt employees meal periods during the day. Brinker, 53 Cal.4th at 1018; see Cal. Lab. Code § 512. Wage Order 14 prohibits *inter alia* an employer from employing their agricultural employees for more than 5 hours without providing at least one 30 minute meal period, unless not more than 6 hours will complete the day's work and the employer and employee agree to waive the meal period. See 8 C.C.C.R §

---

[3] If the Court is not reading the allegation as intended by Mayen, then the amended complaint should include clarifying instructions that describes a typical work week in which non-confirming rest breaks were provided, e.g. a description of shift start and ending times, times when breaks were due, how breaks were given, how long the breaks lasted, and CCH's conduct towards employees during rest breaks.

11140(11)(A). An employer may require an on-duty meal period only if the nature of the work prevents the employee from being relieved of all duties and the employer and employee agree in writing to on-the-job paid meal periods. See id. Assuming that the six hour workday and the agreed on-duty meal period exceptions do not apply, "employers fulfill their obligation to provide meal periods to their employees when they relieve their employees of all duty, relinquish control over their activities, and permit them a reasonable opportunity to take an uninterrupted 30-minute break, and do not impede or discourage them from doing so." Brinker, 53 Cal.4th at 1040; see Rodriguez v. Taco Bell Corp., 896 F.3d 952, 956 (9th Cir. 2018). If an employer forces an employee to miss a meal period or fails to provide a legally compliant meal period, the employee is entitled to one hour of regular pay for each missed or non-compliant meal period. See Cal. Lab. Code § 226.7(c); Murphy, 40 Cal.4th at 1108.

Here, the FAC alleges that CCH violated Wage Order 14 by failing to provide the Class with the required 30 minute meal periods. See FAC ¶ 71. Instead, CCH required the Class to eat as quickly as possible and to not leave the work area. See id. As a result, the typical meal break was 10 minutes. See id.

The Court finds that the FAC adequately alleges a plausible claim. First, by expressly alleging that CCH violated Wage Order 14 regarding meal breaks, it is reasonably inferred that the class worked a sufficient number of hours so as to be entitled to at least one meal break. Second, the FAC alleges that CCH failed to provide a 30 minute meal period and expressly describes a typical meal break as lasting only about 10 minutes. This is substantially less than 30 minutes. Third, CCH required the Class to eat as quickly as possible and prohibited the Class from leaving the work area. This shows that the Class was impeded and discouraged from enjoying a legally compliant 30 minute meal period. Finally, the allegation as a whole indicates a standing policy or practice against providing 30 minute meal periods. That is, the allegation suggests that CCH had a policy or practice of never providing full 30 minute meal breaks.

It is true that Mayen could provide more detail with respect to this claim as suggested by CCH. Again, the degree of detail urged by CCH is simply unnecessary and more akin to what is required by Rule 9(b), not Rule 8(a). Cf. Cabrera, 2021 U.S. Dist. LEXIS 240875 at *7.

Paragraph 71 of the FAC is sufficient for the Court to infer a standing policy against providing the Class with legally compliant meal periods because it only permitted short breaks that typically lasted 10 minutes and limited the employees to staying at their work area.[4] Cf. Hansber, 2021 U.S. Dist. LEXIS 192456 at *18-*19 (finding allegations that the employer's standing policies operated on employees in such a way as to prevent employees from have legally compliant rest and meal periods); Harper, 2020 U.S. Dist. LEXIS 33054 at *5-*6 (finding plausibly pled meal and rest break claims based on allegations that employer did not provide breaks, implemented demanding schedules, had no policies that designated rest periods, and discouraged employees from taking rest periods). Therefore, dismissal of the sixth cause of action is inappropriate.

        5.        Seventh Cause of Action – Failure to Reimburse

California employers are mandated to indemnify their employees for all necessary expenditures or losses incurred by the employee as a result of discharging their duties or following their employer's directions. See Cal. Lab. Code § 2802(a); Edwards v. Arthur Andersen LLP, 44 Cal.4th 937, 951 (2008). Further, Wage Order 14 requires employers to provide tools and equipment, as well as protective equipment regulated by OSHA, to their agricultural employees. See 8 C.C.C.R § 11140(9)(B). However, an employee whose wages are at least twice the minimum wage provided by Wage Order 14 may be required to provide and maintain hand tools and equipment that are customarily required by the trade/craft. See id.

Here, the FAC alleges that the Class was required to provide their own protective equipment and hand tools, but CCH failed to reimburse the Class for the cost of these necessary expenses. See FAC ¶¶ 75-76. CCH also failed to provide or reimburse the class for expenses incurred in traveling between blocks or ranches. See id. at ¶ 77. The Class was required to pick two or three different types of vegetable per day and, as a result, were required to change blocks or ranches in the middle of the day. See id. at ¶ 36. This occurred as often as two to three times per day, six days per week, and the travel time was generally between 10 and 15 minutes between ranches/blocks. See id. CCH did not provide transportation when transfer between

---

[4] If the Court is not reading the allegation as intended by Mayen, then the amended complaint should include clarifying instructions as discussed in Footnote 3 *supra.*

ranches/blocks was necessary, so the Class had to use their own vehicles. See id. This conduct allegedly violated § 2802, Wage Order 14(9)(B), and 29 U.S.C. § 1832(c). See FAC ¶¶ 75, 77.

With respect to reimbursement relating to travel between fields, the Court finds a plausible claim is stated. As described above, the FAC alleges how much travel time was involved between farm blocks or ranches, why travel time was necessary, and how often such travel occurred in a typical six day work week. The FAC also makes it clear that CCH provided no transportation and did not reimburse the Class. The allegations, particularly those at Paragraph 36, are sufficient for the Court to conclude that there are multiple instances in which CCH did not reimburse the Class for travel expenses. Therefore, dismissal of reimbursement claims based on the Class's "travel expenditures" is inappropriate.

With respect to failing to reimburse the class for tools and protective equipment, the Court finds that no plausible claim is stated. Unlike the allegations relating to travel expenditures, the FAC contains few factual details. The FAC does not adequately identify any tools or protective equipment are at issue, explain why the tools and protective equipment were necessary to the performance of Mayen's or any Class member's job (or whether the protective equipment was regulated by OSHA), or allege that CCH failed to provide any of the equipment at issue. Further, the FAC does not give any examples of instance in which Mayen or any Class members were required to purchase necessary equipment and were not reimbursed for their expenditures. Thus, the allegations are too vague and conclusory for the Court to conclude that there were concrete instances of CCH failing to reimburse the Class for the purchase of necessary equipment.[5] See Cabrera, 2021 U.S. Dist. LEXIS 240875 at *11. Dismissal with leave to amend of the reimbursement claim based on the Class's "equipment expenditures" is appropriate. See id.

    6.    Eighth Cause of Action – AWPA

In 29 U.S.C. §§ 1831 and 1832, AWPA sets out requirements and regulations regarding the conditions of employment for seasonal agricultural workers. See Doe v. D.M. Camp & Sons, 624 F.Supp.2d 1153, 1166 (E.D. Cal. 2008). Section 1831(b) requires farm labor contractors to

---

[5] The Court notes that CCH's motion identifies more factual details that are not included the FAC regarding reimbursement. Again, not all of the factual information identified by CCH is necessary to allege a plausible claim under Rule 8 and *Iqbal*.

post at the place of employment in a conspicuous place a poster provided by the Secretary of Labor that sets forth rights and protections afforded by AWPA. See 29 U.S.C. § 1831(b); Fulford v. Alligator River Farms, LLC, 858 F.Supp.2d 550, 555 (E.D. N.C. 2012). Section 1832(c) prohibits a farm labor contractor from violating without justification the terms of any "working arrangement made by the contractor . . . with any seasonal agricultural work." 29 U.S.C. § 1832(c); D.M Camp, 624 F.Supp.2d at 1168. A "working arrangement" for purposes of § 1832(c) is the terms of employment actually communicated either expressly or implicitly between an employer and employee; it does not automatically encompass any and all statutes and regulations governing agricultural employment. D.M. Camp, 624 F.Supp.2d at 1172.

With respect to the § 1831(b) posting claim, Mayen admits that he did not add any additional facts or address the Court's prior order that dismissed the original complaint's § 1831(b) claim. Mayen explains that this was an inadvertent mistake and requests leave to amend. Since the Court is dismissing other claims, and because Mayen admits that there was an inadvertent pleading failure, the Court will dismiss this claim with leave to amend.

With respect to the § 1832(c) claim based on a working agreement that incorporated the provisions of Labor Code § 226 (which requires that an employer provide employees with itemized wage statements), the Court previously found that the original complaint did not adequately explain how § 226 became a part of any "working agreement." The FAC addresses the dismissal order by alleging that CCH communicated to the Class that the Class would be provided with an itemized wage statement that would identify the pay rate, hours worked, overtime amounts, etc. See FAC ¶ 20. This new allegation comes close to adequately addressing the Court's concern, but it falls short.

The Court previously found that aspects of California law were communicated to the Class as part of their "working arrangements" through the posting of Wage Order 14. Unfortunately, the FAC does not state that Labor Code § 226 was somehow posted for the Class to see. More to the point, the FAC does not explain how CCH actually communicated to Mayen or any Class member that a § 226 compliant itemized wage statement would be provided as part the "working arrangements." At a minimum, Mayen should be able to allege how exactly CCH communicated

16

to him that § 226 would be part of their "working arrangement," and that this experience was identical to or substantially similar to the experience of the alleged Class.  Without an explanation of how § 226 was communicated to be part of the "working arrangements," the FAC is too conclusory and again fails to plausibly allege that § 226 was part of the "working arrangement" between the Class and CCH.  Therefore, dismissal is appropriate.  Because Mayen has improved his allegations regarding this claim, and because it is not clear that permitting further amendment would be futile, dismissal will be without prejudice.

    7.    Ninth Cause of Action – UCL

The UCL broadly proscribes the use of any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code. § 17200; Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1177 (9th Cir. 2016).  "The UCL operates as a three-pronged statute: 'Each of these three adjectives [unlawful, unfair, or fraudulent] captures a 'separate and distinct theory of liability.'" Beaver, 816 F.3d at 1177 (citation omitted).  The UCL's "unlawful" prong "borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL," and "virtually any law or regulation — federal or state, statutory or common law — can serve as a predicate . . . ." Candelore v. Tinder, Inc., 19 Cal.App.5th 1138, 1155 (2018).  When the underlying legal claim that supports a UCL cause fails, however, "so too will the [the] derivative UCL claim." AMN Healthcare, Inc. v. Aya Healthcare Services, Inc., 28 Cal.App.5th 923, 950 (2018).

Here, there is no dispute that the FAC's UCL claim is based on "unlawful" conduct.  UCL claims based on "unlawful" conduct are derivative in nature.  See id.  To the extent that the Court has dismissed any other claim in the FAC, that dismissed claim cannot serve as the basis of a UCL claim.  See id.  Therefore, it is appropriate to dismiss all UCL claims that are based on other dismissed causes of action.

With respect to waiting time penalties, CCH is correct that waiting time penalties under Labor Code § 203 are not recoverable as restitution under the UCL.  Pineda v. Bank of Am., N.A., 50 Cal.4th 1389, 1401-02 (2010).  To the extent that the FAC attempts to recover waiting time penalties as restitution under the UCL, dismissal with prejudice is appropriate.  See id.

With respect to premium pay owed for meal and rest period violations (one hour of normal

wages), CCH's argument that this pay cannot be recovered as restitution under the UCL because it is a penalty is unsound. Recently, the California Supreme Court held that premium pay for a meal or rest period violation is a wage and not a penalty. See Naranjo v. Spectrum Sec. Servs., Inc., 13 Cal.5th 93, 108, 117, 125 (2022). As a wage, meal and rest break premium pay is recoverable as restitution through the UCL. See Pineda, 50 Cal.4th at 1401-02 (noting that, unlike unpaid wages which are vested based on the employee performing work, waiting time penalties do not vest until they are awarded by a relevant body and thus, cannot be recovered as restitution). Any contrary authority, which is the basis of CCH's argument in its motion, is inconsistent with *Naranjo* and invalid.[6]

Finally, with respect to the argument that Mayen as a former employee cannot seek prospective injunctive relief, Mayen does not address this argument. This Court has recognized within the context of a putative class action that former employees lack standing to seek injunctive relief to ensure their former employers comply with the California Labor Code. Howell v. Leprino Foods Co., 2020 U.S. Dist. LEXIS 25515, *13 (E.D. Cal. Feb. 18, 2020); Perez v. Leprino Foods Co., 2018 U.S. Dist. LEXIS 47698, *14-*15 (E.D. Cal. Mar. 22, 2018) (and cases cited therein). In the absence of an opposition, the Court will dismiss Mayen's demand for injunctive relief due to a lack of standing. See id.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss (Doc. No. 34) is GRANTED in part;
2. The first cause of action, seventh cause of action based on "equipment expenditures," the eight cause of action based on violations of 29 U.S.C. § 1831(b) and 29 U.S.C. § 1832(c) (but only to the extent that the violation is based on Labor Code § 226), and the claims in

---

[6] The only authority cited by CCH in support of its argument is an unpublished 2017 decision from the Central District of California. *Naranjo* had not yet been decided by the time CCH filed its briefing. Nevertheless, years before *Naranjo* was decided, this Court had taken the view that the premium pay for meal and rest break violations is a wage and not a penalty. E.g. Bates v. Leprino Foods Co., 2020 U.S. Dist. LEXIS 204511, *12 (E.D. Cal. Oct. 30, 2020); Finder v. Leprino Foods Co., 2015 U.S. Dist. LEXIS 30652, *12 (E.D. Cal. Mar. 12, 2015). CCH did not cite to or address these decisions.

     the ninth cause of for injunctive relief and that are based on other dismissed causes of action, are all DISMISSED;

3. Defendant's motion to dismiss is otherwise DENIED;

4. Within twenty-eight (28) days of service of this order, Plaintiff may file an amended complaint that is consistent with the analysis of this order; and

5. If Plaintiff fails to timely file an amended complaint, then leave to amend will be automatically withdrawn without further notice and Defendant shall file an answer within forty-two (42) days of service of this order.

IT IS SO ORDERED.

Dated:   August 19, 2022

                              SENIOR DISTRICT JUDGE